UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RAHUL BHATTACHARJEE, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 4:21-CV-00826-SEP |
| | ) |
| JEANNE MARIE CRAIG | ) |
| | ) |
| Respondent. | ) |

**MEMORANDUM AND ORDER**[1]

Before the Court is Petitioner's Complaint for Return of Child, Doc. 1, brought pursuant to the Hague Convention on the Civil Aspects of International Child Abduction (Hague Convention), October 25, 1980, 22 U.S.C. § 9001, 1343 U.N.T.S. 22514. For the reasons set forth below, Petitioner's Complaint is granted.

**THE HAGUE CONVENTION**

The purpose of the Hague Convention is to "protect children internationally from the harmful effects of their wrongful removal or retention" caused by the removal of a child from the place of their habitual residence. Hague Convention Preamble; *see Barzilay v. Barzilay (Barzilay I)*, 536 F.3d 844, 846 (8th Cir. 2008). The Hague Convention's primary objectives are "to secure the prompt return of children wrongfully removed to or retained in any Contracting State" and "to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." Hague Convention art. I; *Silverman v. Silverman*, 338 F.3d 886, 897 (8th Cir. 2003). *See Acosta v. Acosta*, 725 F.3d 868, 875 (8th Cir. 2013) (The Convention's "primary purpose is to restore the status quo and deter parents from crossing international borders in search of a more sympathetic court.").

---

[1] This is a summary version of the Court's full Memorandum and Order, which has been filed under seal by Order of this Court pursuant to Eastern District of Missouri Local Rule 13.05. Doc. 41. This version accurately reflects the totality of the Court's reasoning and includes all citations to the record. The full Memorandum and Order is accessible to all parties.

1

The United States, a signatory to the Hague Convention, implemented the treaty through the International Child Abduction Remedies Act (ICARA). 22 U.S.C. §§ 9001-11; *see Chafin v. Chafin*, 568 U.S. 165, 168 (2013). This Court has jurisdiction over the matter pursuant to 22 U.S.C. § 9003 and 28 U.S.C. § 1331.

## BACKGROUND

Petitioner filed this Complaint for Return of Child on July 8, 2021. Doc. 1. Respondent was served on July 9, 2021, and filed her Answer on July 30, 2021, which included the Hague Convention Article 13 defense that child R.C. objected to being returned to Singapore. Doc. 6. Plaintiff filed a Motion to Expedite the Proceedings pursuant to Articles 2 and 11 on August 2, 2021. Doc. 7. Respondent filed her Response to the Motion to Expedite on August 10, 2021, and the parties filed a joint scheduling plan the following day. Docs. 10 and 11. A Rule 16 Conference was held on August 16, 2021, and the resulting Case Management Order set a bench trial for September 13, 2021. Doc. 13.

On September 3, the parties submitted pre-trial briefs. Docs. 14 and 15. Respondent's Brief conceded Petitioner's prima facie case for wrongful removal, leaving Respondent's Article 13 mature child defense as the only disputed issue. Doc. 15. In order to evaluate R.C.'s objection, this Court held an *in-camera* interview on the record with R.C. on September 9, 2021. The Court released an unofficial copy of the transcript, under seal, to counsel for both parties following the interview. The official transcript was filed under seal the next business day. Doc. 29. The Court held a bench trial on September 13, 2021, hearing testimony from Respondent and arguments from both parties. The parties submitted post-trial briefs on September 20, 2021. Docs. 38 and 40. The matter is now fully briefed and ready for disposition. Based on the evidence in the record and the parties' legal arguments, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

Petitioner, a Canadian citizen, and Respondent, a United States citizen, were married in the United States in 2006. Doc. 39 ¶ 1 (Joint Stipulation of Facts). The parties have two children, R.C., 13 years old, and C.C., 11 years old. *Id.* ¶¶ 2, 4. R.C. was born in 2008 in the United States, where the parties lived and worked at the time. *Id.* ¶ 2. Shortly thereafter, the

parties moved to Singapore to accommodate Petitioner's career. *Id.* ¶ 3. C.C. was born in Singapore in 2010. *Id.* ¶ 4. Both children are United States citizens. Doc. 15 at 1.[2]

In 2015, Petitioner filed for divorce. Doc. 39 ¶ 10. In 2018, while the divorce proceedings were pending, Respondent filed a request to relocate with the children to St. Louis. *Id.* ¶ 11. On September 21, 2020, the Singapore High Court issued its judgment regarding both the divorce and Respondent's relocation application, granting joint custody to the parties and denying Respondent's application to relocate with the children to the United States. Pet. Ex. 12 ¶ 221 (Singapore High Court Judgment). In May 2021, Petitioner filed an application for a restraining order with the Singapore High Court seeking to prevent Respondent from leaving Singapore with the children. Pet. Ex. 30 at 1 (Singapore High Court Application for Restraining Order). According to Petitioner, the High Court scheduled a hearing for May 25, 2021.[3] Doc. 14 at 5; Doc. 38 at 12. On May 19, 2021, Respondent removed the children to Ballwin, Missouri, Doc. 37 at 85:9-86:5, where they have resided for the last four months. Doc. 6 ¶ 40.

## CONCLUSIONS OF LAW

The United States and Singapore are both signatories to the Hague Convention.[4] In a case arising under the Hague Convention, once a petitioner establishes a prima facie case for return of a child, the Court must order return unless the respondent rebuts that prima facie case or establishes one of several affirmative defenses provided by the Convention. *See Custodio v. Samillan (Custodio I)*, No. 4:15-CV-01162-JAR, 2015 WL 9477429, at *4 (E.D. Mo. 2015); *Rydder v. Rydder*, 49 F.3d 369, 372 (8th Cir. 1995). Here, Respondent concedes

---

[2] Petitioner does not expressly acknowledge that C.C. is a U.S. citizen, but Respondent made that claim in her Answer and Pre-Trial Brief, and Petitioner did not refute it.

[3] There is no evidence in the record of the May 25, 2021, hearing, and Respondent does not acknowledge it in her briefing. She does acknowledge, in both briefing and testimony, that she took the children out of Singapore before she was authorized to do so under the custody agreement and while an application to keep them in Singapore was pending. Doc. 37 at 87:2-89:7.

[4] https://travel.state.gov/content/travel/en/International-Parental-Child-Abduction/abductions/hague-abduction-country-list.html (last visited Sept. 27, 2021).

Petitioner's prima facie case and raises only the mature child defense under Article 13 on behalf of the parties' older child, R.C.[5]

In order to defeat Petitioner's prima facie case for return, Respondent bears the burden of proving each element of the mature child defense by a preponderance of the evidence. *Custodio v. Samillan (Custodio II)*, 842 F.3d 1084, 1089 (8th Cir. 2016). Specifically, Respondent must prove (1) "that the child has attained an age and degree of maturity at which it is appropriate to take account of its views and (2) that the child objects to being returned." *Id.* (internal quotation marks omitted). The Court must construe the mature child defense narrowly. *Id.* Construing a Hague defense narrowly means the court has the "opportunity, in *extraordinary cases* . . . to consider the practical realities of the situation. However, it is the clear import of the Convention that in *most cases* the duty of that court . . . is *to return the child* to the country of habitual residence for resolution of the custody dispute under the laws of that country. *Friedrich v. Friedrich*, 983 F.2d 1396, 1403 (6th Cir. 1993) (emphasis added).

"A case arising from a petition under the Hague Convention is not a custody proceeding." *Custodio II,* 842 F.3d at 1090 (quoting *Barzilay I*, 536 F.3d at 844). This Court "has the authority to determine the merits of an abduction claim, but not the merits of the underlying custody claim." *Id.* (internal quotations omitted). However, this general principle "do[es] not control application of the mature child defense." *Id.* A mature child's objection can be conclusive. *Id.* at 1091. "The child's objections can be the sole reason that a court refuses to order return, but when they are, the 'court must apply a stricter standard in considering the child's wishes.'" *Id.* at 1089 (quoting *Tsai-Yi Yang v. Fu-Chiang Tsui*, 499 F.3d 259, 278 (3d Cir. 2007)).

Analysis of the mature child defense is a two-step process. First, the Court must determine whether R.C. is of sufficient age and maturity for his views to be considered. *Custodio II*, 842 F.3d at 1089. Second, the Court must evaluate the nature of the objection and determine whether it is a particularized objection or merely a general preference. *See*

---

[5] Respondent also argues that, after permitting R.C. to stay, the Court should also deny Petitioner's claim as to the parties' younger child, because it would be improper to separate the siblings. Doc. 15 at 13-16; Doc. 40 at 14. Because the Court finds that R.C.'s objection is insufficient to defeat Petitioner's claim, it does not reach that argument.

4

*id.* at 1089, 1091; *Babcock v. Babcock*, 503 F. Supp. 3d 862, 881-82 (S.D. Iowa 2020); *Yang*, 499 F.3d at 279; *Haimdas v. Haimdas*, 720 F. Supp. 2d 183, 206 (E.D.N.Y. 2010), *aff'd* 401 Fed. Appx. 567 (2d Cir. 2010); *Vite-Cruz v. Sanchez*, 360 F. Supp. 3d 346, 356 (D.S.C. 2018). If either element is not satisfied, the Court should order return of the child in accordance with the Convention's general intent.

### A. Maturity

The Hague Convention sets no minimum age at which a child is sufficiently mature for his or her objection to be considered by a court. Once a child reaches 16 years old, the Convention no longer applies, and the Explanatory Report explains that "it would be very difficult to accept that a child of . . . fifteen years of age should be returned against its will." ELISA PEREZ-VERA, EXPLANATORY REPORT: HAGUE CONVENTION ON PRIVATE INTERNATIONAL LAW 8 (1981), https://assets.hcch.net/upload/expl28.pdf. But this "determination must be made on a case-by-case basis." *Custodio I*, 2015 WL 9477429 at *4. When evaluating the mature child exception, as with any affirmative defense under the Hague Convention, "the district court has the discretion to refuse to apply the defense and order the return of the child if it would further the aim of the Convention which is to provide for the return of a wrongfully removed child." *Custodio II*, 842 F.3d at 1091 (internal quotation marks omitted) (reviewing the district court's application of the mature child exception for abuse of discretion).

R.C. turned 13 years old in June 2021, shortly after leaving Singapore for the United States and a few weeks before the Complaint was filed. He is still nearly three years from aging out of the reach of the Convention, but it is not unheard-of for a court to find that a child who is 13 years old, or even younger, is of sufficient maturity that the Court should consider his objection in a Hague Convention case. *See, e.g.*, *Dubikovskyy v. Goun*, No. 2:20-CV-04207-NKL, 2021 WL 456634, at *4-*9 (W.D. Mo. Jan. 7, 2021) (slip op.) (granting the objection of a twelve-year old girl who "demonstrated a maturity beyond her years"). Such determinations are "fact-intensive and idiosyncratic." *de Silva v. Pitts*, 481 F.3d 1279, 1287 (10th Cir. 2007). It is Respondent's burden to make a showing that R.C. is sufficiently mature by a preponderance of the evidence. *Custodio II*, 842 F.3d at 1089.

As evidence of R.C.'s maturity, Respondent points to her own testimony and the Court's interview with R.C. Respondent testified that "I've seen it evidenced. I have seen the way he behaves, the way he reacts, the way that he's grown . . . in comparison to his peers[.]"

5

Doc. 37 (Trial Transcript) at 66:20-23. From the Court's interview with R.C., Respondent points to R.C.'s explanation of his preference for social studies over math. Doc. 29 (R.C. Interview Transcript) at 13:11-22. Respondent also notes R.C.'s role as a camp counselor, caring for a group of four-to-five-year-old children, and his good-humored retelling of when he created a mock country in his social studies class. Doc. 29 at 15:1-20.

Petitioner contends that R.C.'s interview showed that he is not mature enough for a court to consider his objection. Petitioner suggests that the language R.C. used in his testimony makes him sound young for his age and that, aside from occasional moments, his vocabulary is that of a fifth grader. Petitioner also notes that R.C. frequently contradicted himself during the interview. *See*, *e.g.*, Doc. 29 at 16:1-14; 16:21-17:4; 24:1-9; 10:11-14; 13:12-14:17.

The preponderance of the evidence in the record does not support Respondent's claim that R.C. has reached sufficient maturity for a court to consider his objection. R.C. generally exhibits traits of a typical 13-year-old. He is clearly at the age when young people start modeling adult behavior and asking to be treated like adults, and he is blessed with the intelligence and education to express his opinions clearly. But the record does not suggest that his opinions are those of a mature person.

There is significant evidence, for example, that R.C.'s responses to even minor adversities are exaggerated and disproportionate. *See*, *e.g.*, Pet. Ex. 13 at 116. Respondent testified that one such incident was atypical. Doc. 37 at 96:1-97:4; 132:22-24; 133:5-11. But her testimony also provided confirmation of other instances of extreme reactions, including R.C.'s response to the prospect of returning to Singapore—something that had always been foreordained. *See, e.g.*, Doc. 37 at 55:16; 101:05-102:2. Petitioner also provided evidence of overreaction by R.C. *See* Resp. Ex. S at 2. And R.C.'s own account of his interactions with his father provided further substantiation. *Compare* Doc. 29 at 24:2-9; 25:13; 24:11-12; *and* 32:17-33:14, *with* Pet. Ex. 30 at 134 (Feb. 23, 2021).

Respondent pointed to R.C.'s recent summer job as a day camp counselor for a group of four-to-five-year-old kids as a sign of his maturity. Certainly, the fact that he was entrusted with that role does suggest that those in charge of the program deemed him mature enough to handle it. But R.C.'s own account of camp counseling, which focused on negative aspects

6

of caring for small children rather than anything he might have liked or learned from the experience, did not manifest maturity. *See* Doc. 29 at 8:1-3; 9:10-14.

The rest of R.C.'s *in-camera* interview similarly failed to support Respondent's claim. R.C. was friendly and responsive. His responses to the Court's questions were cogent and confident.[6] *See, e.g.*, Doc. 29 at 14:2-25. But those responses made clear that R.C.'s perspective and priorities are those of a typical child. When asked why he did not want to return to Singapore, R.C. cited his father's "aggressiveness" and "really, really restrictive rules," but in response to follow-up questions he provided little support for either claim.[7] The most egregious illustration of "restrictive rules" was, in his view, an email imposing bedtimes and screen limitations, *see* Pet. Ex. 30 at 134, and when asked for an example of his father's "harassment," R.C. described being forbidden to play baseball or be on his phone,

---

[6] The parties dispute whether R.C.'s interview demonstrated that he had been unduly influenced by Respondent. Doc. 38 at 2, 9; Doc. 40 at 12-14. Because the Court finds that R.C. is not sufficiently mature to assert the mature child objection, it does not reach the question of undue influence. *de Silva*, 481 F.3d at 1286 ("if a court determines that the youngster's opinion is the product of undue influence, the child's wishes are not taken into account").

[7] In his interview, R.C. stated that Petitioner "used to yell at me a lot," and "there was a time he hit me, and I just stopped [going to Petitioner's house]." The Court asked follow-up questions in an effort to determine whether R.C. and Petitioner have a physically abusive relationship, but R.C. declined to elaborate on the alleged incident, stated that Petitioner had never hit him any other time, and acknowledged that his little brother has not had the sort of conflicts with his father that he has. Doc. 29 26:13-27:21. Nothing stated at trial or submitted into evidence suggests that Petitioner has a history or pattern of violence such that R.C. would be endangered by his return to Singapore. Ordinarily, a claim that a child would be endangered by their return would be brought under Article 13's grave risk of physical or psychological harm defense. Respondent has not raised this defense. *See Haimdas*, 720 F. Supp. 2d at 207 (finding that the child's "sweeping statements" of mistreatment were not sufficient to prevent return because there was no evidence of "an ongoing pattern or practice" of abuse, only a "few specific instances when [the] mother had hit them or left them alone," and respondent had "not asserted that the 'grave risk of harm' exception" should apply). Cases involving the grave risk of harm defense have noted that "[t]he potential harm must be severe, and there must be a probability that the harm will materialize." *Ermini v. Vittori*, 758 F.3d 153 (2d Cir. 2014) (internal quotation marks omitted). "A grave risk of harm may exist in cases involving serious abuse or neglect." *Acosta*, 725 F.3d at 875. In her testimony, Respondent did not suggest that Petitioner was violent or that R.C. would be endangered by being in Petitioner's presence. In fact, Respondent detailed how she had planned to return R.C. to Singapore so that he could spend time with Petitioner; she hoped R.C. and Petitioner could mend their relationship; and that she is "trying to encourage contact between R.C. and his father." Doc. 37 at 70: 15-22, 99:3-5, 100:12-21, 103:9-12. Based on Respondent's testimony and the lack of evidence of a pattern or practice of physical abuse, the Court finds there is insufficient evidence to conclude that Petitioner poses a risk of harm to R.C. if he is returned.

7

Doc. 29 at 35:21-36:2.  Commenting on his Singaporean school, R.C. noted:  "We do kind of an American like curriculum minus most of the good stuff."  And asked what "the good stuff" meant, he added, "I don't know.  The fun stuff."  Doc. 29 at 11:17.

The fact that R.C.'s responses reflected the interests and concerns of a perfectly normal child of his age is no discredit to him.  But it is an *extraordinary* case when a child under the age of 16 is deemed mature enough for his objection to defeat a meritorious petition for his return under the Hague Convention.  *Friedrich*, 983 F.2d at 1403.[8]  And when a child's objection is the *sole* defense against a petition for return, the standard is stricter still.  *See Custodio II*, 842 F.3d at 1089; *Friedrich*, 983 F.2d at 1403.  Based on the evidence presented, this is not an extraordinary case, and Respondent has not satisfied that stricter standard.

Thus, the Court finds that Respondent has failed to carry her burden of proving by a preponderance of the evidence that R.C. is of an age and maturity at which his objections should be considered by the Court.[9]

### B. Particularized Objection

Respondent has also failed to show that any of R.C.'s objections to returning to Singapore are the kind of "particularized" objections that are cognizable under Article 13.  A child's wishes or generalized desires, as opposed to concrete objections, are not sufficient:

> A preference is not an objection.  There is a substantive difference between preferring to live in one of two countries—when living in either country would be acceptable—and affirmatively objecting to returning to one country—when living in that country would be unacceptable.  Only an objection is sufficient to trump the Convention's strong presumption in favor of return.

---

[8] *See, e.g.*, *Dubikovskyy*, 2021 WL 456634 at *9 (denying a petition for return of a 12-year-old who was "substantially above-average intellectually"; had "a well-developed sense of responsibility for her sister and the feelings of other people"; articulated concerns that were "not superficial or childish"; and who "recognized that the choice before her was not black and white and did not wish to harm her father").

[9] That conclusion is consistent with the Singapore High Court's detailed 118-page decision from September 21, 2020.  Pet. Ex. 12 ¶ 97 ("In my view, at 12 and 10 years old, the children lack the maturity to decide on major issues such as relocation.").  Respondent did testify that R.C. has matured in the year since the Singapore Court's decision, Doc. 37 at 96:15, and counsel pointed out that that it had been even longer since the Singaporean child representative had met with R.C. in anticipation of that decision, *id.* at 47:3-16, but all of the incidents cited herein date from after the Singapore High Court's decision.

8

*Rodriguez v. Yanez*, 817 F.3d 466, 477 (5th Cir. 2016); *see also Haimdas*, 720 F. Supp. 2d at 206; *Babcock*, 503 F. Supp. 3d at 881-82; *Vite-Cruz*, 360 F. Supp. 3d at 356. Respondent outlines four reasons that R.C. objects to returning, none of which qualifies as a particularized objection to returning to Singapore of the kind that could override Petitioner's request.

R.C.'s principal objection to returning to Singapore is that he wants to be away from his father. Doc. 40 at 4. According to Respondent, R.C.'s basis for that objection is that Petitioner displays "aggressive conduct toward [R.C.]"; prevents him from playing sports; imposes "arbitrary, unfair and rigid rules"; insists that R.C. "stay in his room" during his time at Petitioner's home; and has repeatedly blocked R.C.'s trips to the United States. Doc. 40 at 4. Assuming the accuracy of Respondent's characterizations of R.C.'s testimony and the factual record,[10] R.C.'s objection to being around his father amounts to a preference for one parent over another, which is an issue the Hague Convention precludes this Court from adjudicating. *Compare Vite-Cruz*, 360 F. Supp. 3d. at 360 ("Child's preference for one parent over another is insufficient."), *Forcelli v. Smith*, No. 20-CV-00699, 2020 WL 5015838, at *10 (D. Minn. 2020) ("Considering such a preference would place the Court in the position of deciding parental custody, which is prohibited by the Hague Convention and ICARA."), *and Haimdas*, 720 F. Supp. 2d at 208 (rejecting objection of child who "sees this as a choice of which parent he wants to live with"); *with Dubikovskyy*, 2021 WL 456634, at *4 ("M.D. has throughout this process expressed concern about hurting her father's feelings and has shown love for both parents. Thus, her objection to returning to Switzerland is not just an expression of a preference for one parent over another.").

Second, R.C. objects to returning because he is close to his family in St. Louis. Doc. 40 at 5. R.C. insists that he remains close to Respondent's family here, because it "is really [his]

---

[10] The Court acknowledges that some aspects of Respondent's account are tendentious, e.g., the allegations that Petitioner prevented R.C. from playing sports, *see* Doc. 29 at 23 (stating that he had played baseball in sixth grade and "then COVID canceled everything."; Trial Tr. at 130:2-12 (Respondent admitting that R.C. had not asked to play soccer in Singapore), or required R.C. to stay in his room, *see* Doc. 29 at 35:21-25 (complaining that he "couldn't do anything when I was with him because [I] was just really – just sitting in my room" but not that Petitioner had confined him to it), and therefore explicitly does *not* adopt Respondent's factual claims as the Court's findings. It is not necessary for the Court to resolve any underlying factual dispute, however, because the objection fails even assuming Respondent's version of the facts.

only family now." Doc. 29 at 32:14-40:2. If that statement is accurate, it appears to be only because R.C. has purposefully cut off communication with his family in Singapore, including Petitioner and Petitioner's brother. *Id.* R.C. reported to the Court that he had also terminated communication with Petitioner's parents, who live in India. *Id.* R.C. articulated no grievance against any member of Petitioner's family. Thus, his preference for one side of the family appears to be a function of his preference for one parent over another.

His preference for his family in St. Louis could also be a function of the fact that the time he spends with them is less contentious and more fun than his time in Singapore. *See, e.g.*, Doc. 37 at 43:1-2 ("He has stability here. He likes going to baseball games. R.C. has peace here."); Doc. 29 at 19:15-22 (relating that he and his brother "sit in grandma's basement" and play video games together, which is "a lot of fun"); Pet. Ex. 12 ¶¶ 163-64 (Singaporean court opining that the comparatively positive association with living in St. Louis "is likely attributed to their geographical distance from the litigation proceedings in Singapore when they are in the U.S.," and that "it is not fair . . . to draw a direct comparison between their time in the US and in Singapore"). Whatever the cause, R.C.'s closeness to family members in St. Louis does not make living in Singapore "unacceptable." *Rodriguez*, 817 F.3d at 477. Thus, they are not "sufficient to trump the Convention's strong presumption in favor of return." *Id.*

Third, R.C. objects to certain features of the school he attends in Singapore. Doc. 40 at 7. Most notably, he objects to the fact that a significant proportion of the students leave every year, due to the fact that so many are children of non-Singaporeans. Doc. 29 at 28:1-10. The transience of the student body has inhibited R.C.'s ability to maintain friendships over time. *Id.* at 28:20-22. He also evidently prefers the offerings available at the school he has been attending for the last several weeks in St. Louis. *Id.* at 17:8; Doc. 37 at 53:3-13. Although the Court sympathizes with the challenges R.C. has encountered at his Singaporean school, and the fact that he would prefer a different curriculum, neither of those complaints about his school would give the Court sufficient reason to override Petitioner's rights to have his children returned under the Hague Convention. R.C.'s school in Singapore is not unacceptable. In fact, Respondent has described it as R.C's "safe neutral space" in Singapore. Doc. 37 at 104:9-18. Like his preference for his family in St. Louis, R.C.'s preference for a different school does not qualify as a particularized objection to returning to Singapore.

10

Fourth, and finally, Respondent contends that R.C. objects to returning to Singapore because "if he becomes a permanent resident of Singapore, as his father wants, he will have to serve in the Singaporean military," and because he wants to avoid the "really creepy, scary" rules that Singapore has imposed due to COVID-19.  Doc. 40 at 7.  Although those two objections are actually objections to returning to Singapore, they are not sufficient to support the mature child objection affirmative defense for two reasons.  First, R.C. did not actually articulate either one of those concerns as a reason that he did not want to return to Singapore.  R.C. mentioned the permanent resident issue as an example of something his father had tried in the past, but Respondent had stopped.  Doc. 29 at 37:1-2.  And he raised Singapore's COVID restrictions when discussing why he hadn't played baseball after sixth grade.  *Id.* at 21:21-22:22.  When asked where he preferred to live and why, R.C. went on at length about wanting to get away from his father; then he mentioned the way his school is structured; and then he discussed having a lot of family in St. Louis.  After exploring each of those topics, the Court asked R.C. : "Is there anything else you want to tell me about your life here or your life there that you think is relevant to why you don't want to go back?"  R.C. responded:  "No, not really.  I just really need to get away from my father."  *Id.* at 34:1-5.  Thus, Respondent is misstating the record in claiming the prospect of becoming a permanent resident and Singapore's COVID restrictions as bases for R.C.'s objection.

In addition, Respondent fails to provide any evidence to substantiate the concerns R.C. expressed about permanent residency or COVID restrictions.  COVID-related restrictions vary worldwide, and they are constantly in flux.  Respondent has submitted no evidence of what Singapore's response even is, much less that it makes living there "unacceptable."  *Rodriguez*, 817 F.3d at 477.  A 13-year-old's subjective evaluation of Singapore's methods for tracking the coronavirus, without more, is plainly insufficient to justify overriding his father's right to have his wrongfully removed child returned under the Hague Convention.  And while admittedly this Court is not trained in Singaporean law, Respondent has not presented any evidence that R.C. will be required to become a permanent resident of Singapore if this Court grants Petitioner's request, or that he would be required to join the Singaporean military, or that either prospect would materialize before he turned sixteen, when the Hague Convention will no longer apply to him.  As such, that objection would also fail, even if R.C. had made it.

11

In sum, none of the objections advanced by Respondent on R.C.'s behalf is the kind of particularized objection to returning to Singapore that would be sufficient to support the mature child objection defense.

## CONCLUSION

Having conceded Petitioner's prima facie case for return and raised only the mature child objection in response, Respondent can defeat Petitioner's request only by showing, by a preponderance of the evidence, *both* that R.C. is of sufficient age and maturity for his views to be considered *and* that R.C. has made a properly particularized objection to returning to Singapore. *Custodio II*, 842 F.3d at 1089. On the record before the Court, Respondent has done neither.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's Complaint for Return of Child, Doc. 1, is **GRANTED**.

**IT IS FURTHER ORDERED** that R.C. and C.C. shall be returned to Singapore at Respondent's expense at a reasonable date and time mutually agreed upon by the parties.

**IT IS FURTHER ORDERED** that Respondent is ordered to make all necessary arrangements associated with returning the children to Singapore.

**IT IS FURTHER ORDERED** that Respondent shall not, absent leave of this Court, remove the children from the Eastern District of Missouri pending their return to Singapore.

**IT IS FURTHER ORDERED** that counsel for Respondent shall file a notice with the Clerk of Court immediately upon R.C. and C.C.'s arrival in Singapore indicating that Respondent has fully complied with the terms of this Order.

**IT IS FURTHER ORDERED** that no award of attorneys' fees or other costs, apart from the aforementioned transportation costs associated with the children's return, will be made at this time. The Court will consider any separate request for attorneys' fees that Petitioner may file, upon motion properly made.

**IT IS FINALLY ORDERED** that this Court will retain jurisdiction to enforce this order.

A separate judgment will accompany this Order.

Dated this 1st day of October, 2021.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE