UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RAHUL BHATTACHARJEE, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 4:21-cv-00826-SEP |
| ) | |
| JEANNE MARIE CRAIG ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM AND ORDER

Before the Court is Petitioner Rahul Bhattacharjee's Motion for Attorneys' Fees and Costs. Doc. 46. The Motion is fully briefed and ready for disposition. For the reasons set forth below, the Motion is granted.

### FACTS AND BACKGROUND

Petitioner brought this case pursuant to the Hague Convention on the Civil Aspects of International Child Abduction (Hague Convention). On May 19, 2021, Respondent removed the parties' two children, R.C. and C.C., from Singapore to Ballwin, Missouri. *See* Doc. 43 at 3. Petitioner filed his Complaint for Return of Child in this Court on July 8th. Doc. 1. Respondent conceded the prima facie case for wrongful removal but raised the mature child exception as an affirmative defense. *See* Doc. 15 at 3. On September 13th, the Court held a bench trial, and on October 1st, the Court issued its Memorandum and Order finding that Respondent had failed to meet her burden to show that the mature child exception applied. *See* Doc. 43 at 13. Based on that finding, the Court ordered Respondent to return the children to Singapore at a date and time mutually agreed upon by the parties, that Respondent make all necessary arrangements and return the children at her own expense, and that Respondent provide the Court with notice of the children's arrival in Singapore. *Id.* On November 10th, Respondent notified the Court that the children had been returned to Singapore in accordance with the Court's Order. *See* Doc. 45. On November 20th, Petitioner filed this Motion, seeking $81,571.92 as payment for attorneys' fees and costs in the amount of $41,380.50 for Jonathan Marks and $40,191.42 for Richard Min. Doc. 46 ¶¶ 14-15.

1

**LEGAL STANDARD**

Article 26 of the Hague Convention states: "Upon ordering the return of a child . . . the judicial or administrative authorities may, where appropriate, direct the person who removed or retained the child . . . to pay necessary expenses incurred by or on behalf of the applicant, including travel expenses, any costs incurred or payments made for locating the child, the costs of legal representation of the applicant, and those of returning the child." Congress enacted Article 26 via § 9007 of the International Child Abduction Remedies Act (ICARA), which instructs: "Any court ordering the return of a child pursuant to an action brought under § 9003 of this title shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of the proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate." 42 U.S.C. § 9007(b)(3).

The general purpose of ICARA is to discourage parents from crossing international borders in search of a more favorable forum in which to settle their custody disputes. *See Souratgar v. Lee Jen Fair*, 818 F.3d 72, 80 (2d Cir. 2016) (citing H.R. Rep. No. 100-525, at 5 (1988), *as reprinted in* 1988 U.S.C.C.A.N. 386). To that end, the purpose of § 9007 is not only to "compensate the bearers of the expenses incurred but also 'to provide an *additional deterrent* to wrongful international child removals and retention.'" *Salazar v. Maimon*, 750 F.3d 514, 520 (5th Cir. 2014) (quoting *Saldivar v. Rodela*, 894 F. Supp. 2d 916, 926 (W.D. Tex. 2012)). But § 9007's added deterrence is not so overriding that a court *must* award fees regardless of the circumstances; rather, the statute's plain text requires that, "*even if* an award of fees would serve a deterrent purpose, that purpose must give way if awarding fees would be 'clearly inappropriate.'" *Souratgar*, 818 F.3d at 80. Nevertheless, the burden is on the losing respondent to show that the award is clearly inappropriate. *See Salazar*, 750 F.3d at 520 ("[T]he prevailing petitioner is presumptively entitled to necessary costs and [ICARA] shifts the burden of proof onto a losing respondent to show why an award of necessary expenses would be 'clearly inappropriate.'") (citing *Sealed Appellant v. Sealed Appellee*, 394 F.3d 338, 346 (5th Cir. 2004)).

The appropriateness of an award of fees and costs "depends on the same general standards that apply when 'attorney's fees are to be awarded to prevailing parties only as a

matter of the court's discretion.'" *Forcelli v. Smith*, 2021 WL 638040, at *3 (D. Minn. Feb. 18, 2021) (slip op.) (quoting *Ozaltin v. Ozaltin*, 708 F.3d 355, 375 (2d Cir. 2013)). "There is no precise rule or formula for making these determinations, but instead equitable discretion should be exercised in light of the relevant considerations." *Id.* (quoting *Ozaltin*, 708 F.3d at 375). Courts have applied various case-specific factors in order to determine whether an award of fees is clearly inappropriate, including: the reasonableness of the fees; whether the respondent is blameless for the current state of affairs; whether the case is a difficult one or it falls squarely within the concerns of the Hague Convention; whether the respondent had a reasonable, albeit mistaken, belief at the time of removal that her actions were consistent with the law of the country of habitual residence; and whether the award would affect the respondent's financial ability to care for the children. *See Mendoza v. Silva*, 987 F. Supp. 2d 910, 915-16 (N.D. Iowa 2014) (collecting cases); *see also Forcelli*, 2021 WL 638040, at *3.

## Discussion

Petitioner argues that because the Court ordered the return of R.C. and C.C. to Singapore, ICARA § 9007(b)(3) requires that the Court order an award of fees unless Respondent can show that such an award would be clearly inappropriate. Doc. 46 ¶ 13. Petitioner does not make any argument as to why an award of fees would not be clearly inappropriate. Instead, Petitioner simply provides the Court with his attorneys' billing statements and requests that the sum of $81,571.92 be awarded for their fees. Doc. 46 ¶¶ 14-15; Docs. 46-1, 46-2. Respondent argues that Petitioner's request is clearly inappropriate because she acted in good faith, Petitioner has not made a prima facie case for a fee award, the requested fees are excessive, and the fee award would cause financial hardship to her and the children. Doc. 47 (Respondent's Memorandum in Opposition). Petitioner did not respond to Respondent's arguments.

**I.      Respondent did not act in good faith.**

Respondent argues that under *Ozaltin*, which she states is "the leading case" on this issue, an award of fees is clearly inappropriate because she acted in good faith when she and the children remained in the United States. Doc. 47 at 3 (citing *Ozaltin*, 708 F.3d at 375-76). Respondent states that she "retained the parties' children in Missouri solely because R.C., aged 13, refused to return to Singapore and strongly objected to doing so." Doc. 47 at 2. Respondent testified that her original plan was to return to Singapore, but that when she

3

told R.C. that she was making the necessary arrangements for their return, he became upset and stated that he would not go back. *Id.* As evidence that she had always intended to return, Respondent refers to the fact that she originally bought round-trip tickets; she maintained her apartment in Singapore; she bought furniture for that apartment just before she left; she bought Singapore school uniforms for the following school year; and she continued to pay for the children's membership in the Singapore-based American Club. Respondent thus argues that, because she "needed to respect the concerns of her son," who she "believed . . . was sufficiently mature for his views to be respected," the fact that she had a "subjective good faith belief in the correctness of her action"—which was not frivolous in light of United States caselaw—makes the award of attorneys' fees clearly inappropriate under *Ozaltin*. Doc. 47 at 2-3 (citing *Ozaltin*, 708 F.3d at 375-76).

Respondent's argument fails for two reasons. First, in *Ozaltin*, "Turkish courts repeatedly implied prior to the Mother's removal of the children from Turkey . . . that the children could live with the Mother in the United States," and the Seventh Circuit vacated the petitioner's fee award because the mother "had a reasonable basis for thinking *at the time of removing* the children to the United States . . . that her actions *were consistent with Turkish law*." 708 F.3d at 375 (emphasis added). Thus, *Ozaltin* might have shielded Respondent from liability for fees if she had reasonably believed that her actions were consistent with the laws of *Singapore*, but the fact that Respondent may have reasonably believed that consideration of R.C.'s objection would be consistent with the laws of the United States does not make this case comparable to *Ozaltin*. Second, *Ozaltin*'s reasonable basis test applies to Respondent's *removal* of the children, not her refusal to return them. Thus, in order for *Ozaltin* to apply here, Respondent would have to be able to show that she reasonably believed that removing the children from Singapore was consistent with Singapore law. Respondent has made no such showing.

Respondent attempts to frame her "subjective good faith belief" around her refusal to return to Singapore, but she ignores her initial removal of the children from Singapore. On September 21, 2020, the Singapore High Court granted joint custody of the children to Petitioner and Respondent and denied Respondent's application to relocate the children to the United States. Doc. 43 (this Court's October 1, 2021, Memorandum and Order) at 3. On May 13, 2021, in the midst of the COVID-19 pandemic, Petitioner filed an application for a

4

restraining order to prevent Respondent from leaving with the children to the United States for their summer break—which was scheduled for May 28th to August 9th—because he was concerned that, due to Singapore's strict re-entry policy at the time, the children would be unable to return to Singapore at the end of the summer. *See* Doc. 43 at 3; Doc. 1 ¶ 20. The Singapore Court set a hearing on Petitioner's application for May 25th. Doc. 43 at 3. Respondent testified that she was aware that Petitioner's application "include[d] a request to prevent [her] from leaving with the children to go to the United States." Doc. 37 at 88:18-20. Nevertheless, Respondent secretly left the country with the children and notified Petitioner of their whereabouts only upon their arrival in the United States the following day. Doc. 37 at 88:24-89:2. Rather than a good faith reasonable belief that her actions complied with Singapore law, Respondent's actions with respect to removal evince an intent to evade or subvert Singapore law.[1] Respondent thus fails to assimilate this case to *Ozaltin*. *See* 708 F.3d at 375.

Respondent's other cases are not persuasive either. In *Malmgren v. Malmgren*, 2019 WL 5092447, at *1-*2 (E.D.N.C. Apr. 1, 2019), the respondent—after taking the parties' minor child to the United States *with the petitioner's permission*—demonstrated that she had acted in good faith when she refused to return to Sweden, because she had informed the father that she planned to stay in the United States with the child for a year, and at that time, the father had not told her that he would seek legal recourse. Respondent argues that this case is like *Malmgren* because "the divorce judgment permitted [her] to travel and she informed Petitioner that she would return with the children and provide make up parenting time." Doc. 47 at 3. But Respondent again ignores her earlier misconduct. Unlike *Malmgren*, she left Singapore surreptitiously—without notice to or permission from Petitioner—five days before a hearing on the precise question of whether she could leave the country with the children. Thus, this case is unlike *Malmgrem*.

Respondent also relies on *Madrigal v. Tellez*, 2015 WL 5174076, at *19-*20 (W.D. Tex. Sept. 2, 2015), where the court denied an award of fees to the petitioner because it found that the children's inability to return to Mexico "was largely a crisis of [the petitioner's] own

---

[1] Respondent acknowledged that her actions were wrongful and conceded the elements of Petitioner's prima facie case for wrongful removal. *See* Doc. 15 at 3.

5

creation"; the petitioner had come before the court with unclean hands; and the respondent had not retained the children in the United States with the hope of obtaining a more favorable custody determination. This case shares none of those features.

Here, Respondent has presented no facts establishing that Petitioner was at fault for the children's removal from or inability to return to Singapore, or that Petitioner came to this Court with unclean hands. And unlike the Court in *Madrigal*, this Court cannot find that Respondent's motive was not, at least in part, to obtain a more favorable custody arrangement. In 2014 and 2018, Respondent applied to relocate the children to the United States. *See* Doc. 37 at 173:6-175:10. The 2014 application was mutually resolved at mediation. *See id.* at 174:16-20. The 2018 application was denied as part of the Singapore Court's September 2020 divorce judgment. Doc. 1-7 ¶ 221(c). Months later, knowing that she was expected to appear in court to contest Petitioner's restraining order, Respondent absconded from Singapore with the children. *See* Doc. 37 at 83:8-16, 88:5-89:7; Doc. 1-8 ¶¶ 11-16. Once in the United States, and after Petitioner filed his petition in this Court, Respondent admitted that she had wrongfully removed the children from Singapore, *see* Doc. 15 at 3, but nonetheless requested that this Court overrule the Singapore Court's custody determination and relocation decision. *Compare* Doc. 1-7 ¶ 221(c) (Singapore court denying Respondent's application for relocation), *with* Doc. 6 ¶¶ 53-56 (Respondent requesting that this Court allow both children to remain in the United States), *and* Doc. 15 at 3-17 (same). Because Respondent's conduct might well have been motivated by the hope of obtaining a more favorable custody determination, *Madrigal* is inapposite on that basis as well.

Respondent further relies on *Mendoza v. Silva*, 987 F. Supp. 2d 910, 916-17 (N.D. Iowa 2014), in which the court denied an award of fees because the respondent had a "good faith belief that the parties had agreed that he would take the children to the United States where they would attend school." As noted above, there was no comparable agreement in this case. Respondent had a trip to the United States scheduled to begin in late May, and Petitioner filed an application in Singapore to prevent them from traveling. Rather than dispute that application in Singapore, Respondent decided to leave before a determination could be made. *See* Doc. 37 at 80:23-89:7. Respondent's reliance on *Mendoza* is misplaced.

Respondent's argument based on *Onrust v. Larson*, 2015 WL 6971472, at *1 (S.D.N.Y. Nov. 10, 2015), fares no better. In that case, the respondent—who had permission to take

6

the child to the United States—retained the child past the agreed return date based on the good faith belief that the child faced a grave risk of harm if returned. Respondent did not raise the grave risk of harm defense in this case; nor did she have permission to bring the children to the United States in the first instance. *Onrust* is thus not comparable.

Finally, Respondent relies on *Rehder v. Rehder*, 2015 WL 4624030, at *3-*4 (W.D. Wash. Aug. 3, 2015), in which the court declined to award fees for a combination of reasons, including: the case was not a simple one that fell squarely within the Hague Convention; the respondent had a good faith belief that the parties had agreed for her to take the children to the United States; and the respondent's financial situation would have made it difficult to pay the award and also care for the child. As detailed above, the first two rationales do not apply here; the third is rejected in Section III, below.

Based on the foregoing, the Court finds that Respondent did not act in good faith in removing the children from Singapore, and her belief that she should refuse to return because of the "need[] to respect the concerns of her son," is not sufficient grounds to find that the fee award would be clearly inappropriate.

II.     **Petitioner is presumptively entitled to a fee award, and the requested fees are not excessive.**

Respondent argues that "[i]t is firmly established that a court must determine whether fees sought by a petitioner under [ICARA] are reasonable using the lodestar method," Doc. 47 at 7 (citing *Norinder v. Fuendes*, 657 F.3d 526, 536 (7th Cir. 2011)); that the lodestar determination is based on several factors for which "[t]he party requesting fees bears the burden of adducing 'satisfactory evidence . . . ,'" Doc. 47 at 7 (quoting *Blum v. Stenson*, 465 U.S. 886, 895-96, n. 11 (1984) (a non-Hague Convention case)); and that Petitioner thus bears the burden to establish a prima facie case for a fee award, which he has failed to do. Doc. 47 at 7.

Pace Respondent, *Norinder* did not "firmly establish" that courts "must" use the lodestar method in Hague Convention cases. *See Norinder*, 657 F.3d at 536-37 (merely noting that "[t]he district court used the lodestar method to calculate attorney's fees" in concluding that "the district court acted within its discretion"). But this Court has found that at least some federal courts have applied the lodestar method to determine the reasonableness of attorneys' fees in Hague Convention cases. *See, e.g.*, *Wan v. Debolt*, 2021

7

WL 3510232, at *2 (C.D. Ill. Aug. 10, 2021); *Neves v. Neves,* 637 F. Supp. 2d 322, 339–40 (W.D.N.C. 2009); *Distler v. Distler,* 26 F. Supp. 2d 723, 727 (D.N.J. 1998); *Freier v. Freier,* 985 F. Supp. 710, 712 (E.D. Mich. 1997). The Court will thus consider the lodestar method as one method for evaluating the reasonableness of the requested attorneys' fees.

When applying the lodestar method, the general rule is that "[t]he moving party must submit evidence supporting the hours worked and the rates claimed." *Wasniewski v. Grzelak–Johannsen,* 549 F. Supp. 2d 965, 971 (N.D. Ohio, 2008). Petitioner has done so here. *See* Docs. 46-1, 46-2. At least one court has further held that "[t]he party seeking fees bears the burden of proving the reasonableness of the hourly rate charged." *Wan v. Debolt*, 2021 WL 3510232, at *2 (C.D. Ill. Aug. 12, 2021) (citing *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999) (a FLSA case)). But ICARA § 9007 does not apparently place any burden on Petitioner; the only burden in the statute is Respondent's to establish that an award of fees "would be clearly inappropriate." 42 U.S.C. § 9007(b)(3). As to Petitioner, the only question is whether it was necessary for him to incur legal fees in order to obtain the return of the children. Here, there is no dispute that it was.

Respondent argues that "[t]he requested fees are unreasonably excessive," because Petitioner hired two attorneys rather than one. Doc. 47 at 8. But that argument goes to the propriety of the size of the fee award—not whether it would be clearly inappropriate for Petitioner to incur legal fees at all. Under the plain text of § 9007—which expressly places the burden on the respondent to show that an award of legal fees would be clearly inappropriate—it is Respondent who bears the burden to show that Petitioner's fees were unreasonably excessive.

Respondent does not argue that the hourly rates charged by Mr. Marks or Mr. Min were unreasonable. Respondent instead argues that Petitioner's requested fees are unreasonably excessive because Marks "was perfectly able to handle the case alone," and "the services of [Min] were redundant and cumulative." Doc. 47 at 8. Respondent points out that the case involved a single narrow issue for which she needed only one attorney herself. *Id.* Petitioner, on the other hand, hired two attorneys, one of whom flew in from New York for the trial but did not examine any witnesses. *Id.* Other than the potential redundancy of Min's presence at trial, however, Respondent points to no specific fees that are cumulative.

8

A Hague Convention case "is one where time is critical, as it is similar to an injunction hearing," and courts should thus not "fault Petitioner's counsel for [their] preparation." *Norinder v. Fuentes*, 2010 WL 4781149, at *6 (S.D. Ill. Nov. 17, 2010). The mere fact that two attorneys were involved in a case does not mean that the attorneys' work was cumulative. "[I]n complex cases an amount of consultation may be reasonable and it is up to the complaining party to specifically establish that it is not." *Wasniewski*, 549 F. Supp. 2d at 976 (rejecting respondent's claim of redundancy because the respondent did not set forth specific objections to establish that a reduction for redundancy was warranted). And because Hague Convention cases are inherently time-sensitive, *see Norinder*, 2010 WL 4781149, at *6, it is not unreasonable for multiple attorneys to work on behalf of a single petitioner. Courts routinely grant fee awards in Hague Convention cases when multiple attorneys represent a single petitioner. *See, e.g.*, *Wan*, 2021 WL 3510232, at *2-*9 (awarding fees for five attorneys; reducing the total award by 25% based on other factors); *Norinder*, 2010 WL 4781149, at *2-*3 (awarding fees for at least three attorneys but reducing one attorney's rate by 20% due to some redundancy with a paralegal); *Wasniewski*, 5549 F. Supp. 2d at 973 (awarding fees for four attorneys); *Distler*, 26 F. Supp. 2d at 727 (awarding fees for two attorneys).

Thus, Petitioner's fees are not unreasonable simply because they were incurred by two attorneys. Much of the work accomplished by Mr. Min would have had to be accomplished by Mr. Marks, if Marks had handled the case alone. "[T]he proper inquiry is not how many hours the opposing counsel spent on the case, but whether the requested fees and costs were necessary to secure the child's return." *Norinder*, 2010 WL 4781149, at *6 (cleaned up and citation omitted). Because Respondent identifies only Mr. Min's presence at trial as potentially redundant or cumulative, the Court will not consider Mr. Min's other fees. *See Wasniewski*, 549 F. Supp. 2d at 976 (explaining that the complaining party must demonstrate which fees are redundant).

The Court disagrees with Respondent's characterization of Mr. Min's contribution at the trial. Although Mr. Min did not examine any of the witnesses, a trial requires attorneys to do more than examine witnesses. While Mr. Marks undertook the examination of witnesses, Mr. Min routinely made objections and responded to inquiries, including

9

questions from the Court, *see, e.g.*, Doc. 37 at 8:21-9:22, 12:2-12, 17:3-7. Moreover, Mr. Min presented Petitioner's opening statement and closing argument. *See* Doc. 37 at 6-7, 152-167.

Based on the foregoing, the Court finds that Petitioner's engagement of two attorneys, rather than one, is not grounds to find that the fee award would be clearly inappropriate.

### III.    The fee award will not cause financial hardship to Respondent or the children.

Respondent argues that an award of fees would be clearly inappropriate due to her "dire" financial circumstances, especially in light of Petitioner's sizable income. Doc. 47 at 9. Respondent does not provide the Court with any direct evidence of her financial circumstances and submits only an uncorroborated affidavit as support. Based upon the factual findings and rulings from the Singapore High Court's September 2020 Judgment—which was attached as an exhibit to Petitioner's Complaint and submitted as an exhibit at trial, and which Respondent herself cites in response to this Motion—the Court finds Respondent's unsupported financial representations to be inadequate.

"An award is clearly inappropriate where the respondent shows the award would impose such a financial hardship that it would significantly impair the respondent's ability to care for the child[ren]." *Wan*, 2021 WL 3510232, at *17 (citing *Rath v. Marcoski*, 898 F.3d 1306, 1311 (11th Cir. 2018)); *see also Mendoza*, 987 F. Supp. 2d at 915 (a fee award . . . might be excessive . . . if it prevents the respondent-parent from caring for the child"); *Forcelli*, 2021 WL 638040, at *3 (courts should consider "the respondent's ability to pay and financial needs for caring for the children").

Respondent represents that she has no legal status in Singapore, is not allowed to work there, and has no independent income. *See* Doc. 47-1 (Respondent's Affidavit) ¶ 8. She states that "[a]part from a small amount of money . . . in a retirement account . . . [her] savings total approximately $180,000." Doc. 47-1 ¶ 9. According to Respondent, Petitioner earns more than $1 million per year. Doc. 47 at 9 (citing Doc. 1-7 ¶ 205).[2] She claims that she is the primary caretaker for the children, and that she receives court-ordered financial support from Petitioner, but that her monthly expenses already exceed that support by

---

[2] Respondent cites to Petitioner's trial exhibit number 12. That trial exhibit was not filed on the Court's docket; however, Petitioner attached the same document—the Singapore Court's Judgement—as an exhibit to his Complaint. *See* Doc. 1-7. The Court therefore cites to the Complaint exhibit, rather than the trial exhibit.

10

approximately $3,000. Doc. 47-1 ¶ 9. She further states that Petitioner's obligation to pay spousal support will terminate in less than three years. *Id.* She also represents that Petitioner has initiated new civil and criminal complaints against her in Singapore, *id.* ¶ 10, and she fears that her finite resources will be depleted by the legal expenses she faces in Singapore, in addition to any amount awarded here. *Id.* Respondent further states that she is not eligible for legal aid, health care, or government assistance in Singapore, and that she may ultimately become unable to pay for legal representation there as well. *Id.*

The Court finds Respondent's representations questionable in light of relevant facts contained in the September 2020 Singapore High Court Judgment, which Respondent herself relies on to claim that Petitioner earns "over $1,000,000 a year." *See* Doc. 47 at 9 (citing Doc. 1-7 ¶ 205). As an initial matter, the Singapore Court's findings were stated in Singapore dollars, not U.S. dollars.[3] *See*, *e.g.*, Doc. 1-7 ¶ 205. Petitioner's annual income was thus approximately $730,000 in the currency that is relevant to evaluation of Petitioner's fee request—not $1 million.[4] The Singapore Court's Judgment further decided, *inter alia*, the division of matrimonial assets, child and spousal support, and backdated spousal support. *See* Doc. 1-7. The Singapore Court found that the parties' total matrimonial assets were valued at $2,297,706. Doc. 1-7 at 56. The Singapore Court awarded Respondent 35% of those assets—$804,197. *Id.* ¶ 127. The Singapore Court also found that Petitioner had already paid $694,686 to Respondent for spousal support between 2015 and 2018. *Id.* ¶ 214. The judgment awarded Respondent an additional $105,120 in backdated support. *Id.* ¶ 220. Thus, between 2015 and September 2020, Respondent was either in possession of or entitled to approximately $1,604,000.

The Singapore Court also awarded Respondent significant amounts in continued child and spousal support. Doc. 1-7 ¶¶ 206, 212. The Singapore Court did reject Respondent's request for $16,459 in monthly spousal support—which included $3,709 in dining expenses and $8,135 in rent—and noted that Respondent was "accustomed to a high standard of

---

[3] On September 21, 2020, the exchange rate between the Singapore dollar and U.S. dollar was S$1-to-$0.73. That means that one Singapore dollar equaled 0.73 U.S. dollars, or one U.S. dollar equaled 1.36185 Singapore dollars.

[4] Hereinafter, the Court has converted the Singapore Court's findings from Singapore dollars to U.S. dollars, based on the 1-to-0.73 exchange rate.

11

living," as evidenced by her habit of flying business class whenever she travelled and "her insistence in staying at a serviced apartment" with a monthly rent of $8,135—a sum that is "more than twice the amount that [Petitioner] pays to rent the parties' matrimonial home." *Id.* ¶¶ 210-11. The Singapore Court also "envisage[d] that [Respondent] . . . should eventually re-enter the workforce and secure financial independence for herself"—despite the fact that "she may face difficulties in re-entering the workforce in Singapore"—because "[s]he is by her own account highly qualified." *Id.* ¶ 211.

Based on those facts, the Singapore Court awarded Respondent $4,380 per month in spousal support, *in addition to* the sum of her monthly rent, to be "capped at the rent presently paid by [Petitioner]." *Id.* ¶ 212. Petitioner thus pays Respondent approximately $8,000 per month in total spousal support.[5] The Singapore Court also ordered Petitioner to pay Respondent $3,650 per month in child support, and $14,600 per year for the children's winter and summer break travel expenses. *Id.* ¶¶ 203, 206. Petitioner was further ordered to pay the entire cost of the children's $58,400-per-year education, and the entirety of the children's health, medical, and "enrichment" expenses. *Id.* ¶ 206. In sum, in addition to paying the entirety of the children's $58,400 per year education, Petitioner pays Respondent more than $154,400 per year: $96,000 per year in spousal support, $58,400 per year in child support, and an additional unknown amount for the children's health, medical, and enrichment expenses.

Considering all of the relevant facts, the Court cannot find that Petitioner's requested award of attorneys' fees would "significantly impair [Respondent's] ability to care for the child[ren]." *Wan*, 2021 WL 3510232, at *17. Respondent's claims that her expenses exceed the amount of support she receives by $3,000 each month fails to place those expenditures in the context of the approximately $11,650 she receives per month in combined spousal support and child support. She also neglects to mention that she does not pay for the children's education; their health, medical, or enrichment expenses; or their summer and winter break travel expenses. And if Respondent's expenses do exceed the amount she

---

[5] The $8,000 figure is a conservative estimate based on (a) the set amount of spousal support ($4,380) and (b) rent—which is capped at Petitioner's rent. Based on the Singapore Court's characterization that Petitioner's rent is approximately half of Respondent's $8,135 per month rent, the Court approximates that Petitioner's rent is close to but less than $4,000.

12

receives from Petitioner each month, it bears noting that the Singapore Court found many of Respondent's expenditures to be unreasonable.  *See* Doc. 1-7 ¶ 211.

The Singapore Court's findings also cast doubt on Respondent's claim that she is "not allowed to work in Singapore," and that "Singapore law is extremely strict in this regard." Doc. 47-1 ¶ 8.  According to the Singapore Court, Respondent not only *could* find employment in Singapore; she "*should*" do so.  Doc. 1-7 ¶ 211 (emphasis added).

And Respondent's concern that her spousal support will end in less than two years does not, on its own, provide grounds to find the fee award clearly inappropriate.  Aside from her assertion that she "will not be able to work"—a claim that the Singapore Court rejects— "and will have to rely on the savings she has now," Respondent provides no rationale for the Court to consider the future termination of her spousal support, which will not occur for at least two and a half years.  More importantly, there is no similar sunset provision for the child support; the winter and summer break travel expenses; or the education, health, medical, and enrichment expenses.  Therefore, even when Respondent's spousal support ends, her "ability to care for the child[ren]" should not be "significantly impaired."  *Wan*, 2021 WL 3510232, at *17; *see Mendoza*, 987 F. Supp. 2d at 915; *Forcelli*, 2021 WL 638040, at *3.

Based on the foregoing, the Court finds that the fee award would not harm Respondent's ability to care for the children, and her financial status is thus not grounds to find that the award would be clearly inappropriate.

## Conclusion

Respondent has failed to carry her burden under ICARA to show that Petitioner's requested attorneys' fees award would be clearly inappropriate.  *See* 42 U.S.C. § 9007(b)(3). Petitioner is thus entitled to an award in the amount of $81,571.92: $41,380.50 for Jonathan Marks and $40,191.42 for Richard Min.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's Motion for Attorneys' Fees, Doc. 46, is **GRANTED**.  Respondent shall pay Petitioner attorneys' fees in the amount of $81,571.92.

Dated this 25th day of July, 2022.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE